Good morning, Your Honors. May it please the Court, my name is Vikram K. Badrinath, counsel for the petitioner, Mr. Aron Acosta Munguia. If I may, I'd like to reserve one minute of time for rebuttal. Your Honors, this case illustrates how easy it is for an immigration judge and the Board of Immigration Appeals to order someone removed from the United States on a mere scintilla of evidence, suspicion, and innuendo. The evidence in this case was unsupported, it was unreliable, and flimsy. In fact, the only evidence the government presented at trial was this singular document, this record of deportable alien in support of its charges. Can we back up a minute? What's the standard by which the evidence had to be proven here? Thank you, Your Honor. Excellent question. The government had charged the petitioner with deportability under Section 237 of the Immigration and Nationality Act rather than inadmissibility under Section 212. That is significant because the government has the burden of proof in this case to prove deportability against the petitioner. Not only does the government have the burden of proof, but the burden of proof is a very high one. It is a standard of clear, convincing, and unequivocal evidence. In this case, the evidence was not clear, was not unequivocal, and not convincing. And for these reasons you see, that's the generality. I looked at the evidence. We've all read the briefs. That wasn't clear and convincing. Why isn't it? Excellent point, Your Honor, and I'll explain it. Isn't excellent just a plain point? Yes, Your Honor. I'll explain it if I may. First of all, again, the only evidence was this record of deportability. Well, that's not accurate. I mean, there was somebody, a person who was physically present that day who testified, i.e., the officer who was the secondary inspector. That's correct, Your Honor. The officer did present himself to testify. However, he had no independent recollection of the events. This happened some 11 years ago. It wasn't lucidly clear that he, whether he was being, whether he was simply testifying to what was in the form or whether he, it was a refreshed recollection. At some point you even referred to it as a refreshed recollection. I couldn't quite tell which it was. Yes, Your Honor. In fact, he did testify that he had no independent recollection of the events, and simply he was repeating what he had originally taken in the report. However, the significant thing is that the information contained in this report, which included statements by two individuals in the vehicle, were never presented at trial. These individuals never came to testify. Of course not. They were gone. They were in Mexico. They couldn't testify. But there is some very strong circumstantial evidence. He said to the officer, these are my good friends, and he referred to them as the phony names on the documents. Then he's asked, did you know they were phony? And he says, I take the Fifth Amendment. So you have circumstantial evidence that he was in a car, he drove them, he referred to them by their phony names, and yet said he'd known them there as good friends. Isn't that fairly strong evidence? Your Honor, in fact, what happened is that when the Petitioner was questioned at the border, he never made any admissions that he knew the immigration status of these individuals. He testified that he used the phony names they had on the phony document, and they were his good friends. Isn't that substantial evidence? Your Honor, it is not. For several reasons. And first of all, again, the Petitioner testified, never made any admission at the border, or even at trial, that he knew the immigration status of these individuals. He believed that they were legally authorized to enter the United States. I thought what you were saying, not only what you were saying, but the immigration judge said he wasn't relying at all on the statements of the impostors. Right? And that's his contention, however, that is... Well, I understand that. So therefore, the fact that these were, in fact, not their names, only comes out of those statements. Exactly, Your Honor. And these individuals... Unless, unless, and this is to me the interesting question, and the hard question, whether the other things that happened at the border, i.e. the car was confiscated, his border crossing card was taken, and there was evidence that that would only happen if they had concluded that there was knowledge. I understand that traces back to the hearsay statements. And then there is some finding, I don't know if it's accurate or not, that he really didn't contest that very much. So, in other words, I mean, if there is evidence, it has to be, my understanding is there has to be something that although they can rely on the taking the fifth, there has to be something else. That's correct, Your Honor. The question is, what's the something else? Exactly, Your Honor. That, you've hit the question, the nail right on the head with the hammer. What is that something else? Well, of course, I read the cases. I mean, you don't have to keep praising us, okay? We do know what's going on here. Well, let's address that, Your Honor. The immigration judge claimed that Petitioner has waived his right to appeal the determination of the inspecting officer. He never made an effort to get his car back. Well, the document does say that he waived his right, and that wouldn't be hearsay, right? Well, that's not exactly clear, Your Honor. At trial, the inspecting officer at CAR 75 testified that it wasn't clear whether a hearing was requested or not. And the petitioner, in fact, at trial, testified that he requested a hearing and he never received any notice. But the I-213 says he waived it. Exactly. That's one of the issues. I mean, the government's argument, by their logic, the inspecting officer could say, the sky is red, and that statement is not allowed to be attacked because this document is inherently reliable. Well, it could be attacked, but the IJ can still conclude that it's accurate, no? In other words, that is a representation of a statement made by the petitioner. Correct. The petitioner never Admissions. I mean, it could come in, right? Potentially, yes. And that's one of the issues in this case, is the petitioner never made any admissions. The government is But the admission, at least, is I waived my right to a hearing. It is represented that he waived his right to a hearing. He testified that he didn't, and there's also, I noticed, an inaccuracy in the IJ and maybe the BIA opinion, which says he admitted he waived it, and he certainly didn't admit that he waived it. Correct, Your Honor. But let's look at those other issues. So the government is saying that even if we excluded the statements of these individuals, even if they weren't brought to testify, even if there are no statement that they had been smuggled into the United States was sufficient because of this other evidence. Well, what is this other evidence? The government claims, well, he was referred to secondary inspection. That's evidence of wrongdoing. Well, people are referred to inspection thousands of times a day all over the United States. That's not evidence of criminal activity or wrongful doing. It seems to me you haven't gotten back to the problem I have with the case, and that is that the statement came in that these are his good friends, and he then, that's, you assume that he's known them before, and he's using the names on the phony documents. And if there's good friends, and if you get these phony documents, isn't that evidence that he was aware that these people were coming in illegally? There's no evidence of that, Your Honor. They could have very well... There's no evidence that they didn't come in when they had phony documents, and that's the only documents they had? What I'm saying is there's no evidence that he had knowledge that their documents were phony. Also, what is the evidence... They're his good friends, he's known him a long time, and they're using phony names rather than their real names, and that's not evidence? It certainly is some evidence, but it's... Circumstantial evidence. Circumstantial evidence. But our rules do not provide that someone be deported from the United States on mere suspicion or circumstantial evidence. So the government has a high unequivocal burden. But you can have unequivocal circumstantial evidence, right? ...meets that burden. You don't toss all this circumstantial evidence. We don't have a case that says that. The government also points to other points in the record as well. I'm sorry, Your Honor? We don't have a case saying that circumstantial evidence is not enough to meet this burden. Well, there is another case that's almost exactly on point here. That's Hernandez-Guadarrama v. Ashcroft, and that's a very similar case. In that case, an individual had seven undocumented aliens in their truck. They were stopped. They were pulled over, charged with deportability. Eventually, the immigration judge and the Court of Immigration feels order removal. But there was one key difference, which is that in that case, you were dealing with the first level. In other words, it was an appeal or a challenge to the actual first determination about the smuggling. Here, other things happened because he didn't challenge the original accusation of smuggling at the border. He went back to Mexico, and the question is whether those other things make a difference. In other words, it was different in that there was nothing else that happened. Legally, however, Your Honor, it's the same because we're dealing with the same ground of deportability. We're not dealing with the Section 212 ground of inadmissibility. We're dealing with a 237 ground of deportability. So the government, in that case, had to prove deportability by clear, convincing medical evidence. Well, suppose he had what the IJ inaccurately says were true, i.e. that he admitted that he waived his right to appeal the officer's determination. He didn't admit that he waived his right, but suppose he had admitted that. That would be something different, and it could well matter, no? Potentially, it could, but there are many instances where people, their cards are seized, they're returned voluntarily back to Mexico. That is not a high level, does not meet the high burden of clear, convincing, and unequivocal evidence. I'd like to ask one last question. Your time is up, but we'll give you a minute in rebuttal. My last question is this. What, in regard to Judge Wallace's question, I wasn't viewing it that way because I was making an assumption that might be wrong. My assumption was that the, still the only evidence that these people were not who they said they were was what they said, and that that was not, and there is no evidence that the documents themselves were investigated or invalidated or anything else. It's only what they said. Is that true or not true? That is true, Your Honor, and that raises an excellent point. This court has previously held in two cases, in Esmose v. Guadarrama v. Ashcroft, that information contained in an I-213 is not presumed to be true if the information comes from a person who is not a government official or a person who is not the subject of the record. These two individuals in the victim. But moreover, the IJ and the NBIA specifically said they weren't relying on it. Well, that's what they said, Your Honor. However, you can't take the, put the genie back in the bottle. When all of these things flowed from their allegations against the Petitioner, which he never had an opportunity to cross-examine, he contests their veracity, their self-interest. This Court has recognized in Hernandez v. Guadarrama that immigration officials may coerce individuals to make statements. Okay. I have one more question that you haven't touched upon, and that is because the immigration judge and the board take the position that because this is a civil case that they can draw an inference of his refusal to speak. Well, I think, Your Honor. You haven't mentioned that as one of the parts of the evidence, but it's one that they relied on. Excellent question. That was valid, isn't it? It is, Your Honor. The point, however, is that before an adverse inference can be drawn, an individual must be presented with probative evidence, fundamentally fair, reliable evidence. And in light of that, the person says, well, I'm going to invoke my Fifth Amendment right to, again, self-incrimination. What case do you have that we are going to reverse the IJ and the board because if they just ask him a question, how do you know that these people are illegal? And he says, I'll take the Fifth Amendment. Board question, Your Honor. Is there a case that you can specifically say that that is improper and we have to strike it? Yes, Your Honor. It's a matter of Guevara, which we've cited to in our briefing. But it doesn't say it's improper and you have to strike it. All it says is there has to be something else. Well, but it says before the immigration judge can draw an adverse inference, there must be some probative evidence. Then the person says- Well, I don't know about the before. I read it as me saying, in addition. I don't know why it has to be before as opposed to after. It just has to be in addition. Well, I'm quoting from the case itself, Your Honor. It says, an alien deportation person who remains silent when confronted with evidence of his alienage, the circumstances of his entry, or his deportability may leave himself open to adverse inferences. So the Board is basically saying it is possible where a person could invoke his Fifth Amendment right, and that may be a situation where if he does so, then no adverse inference can be drawn. But when evidence is presented at trial, and that evidence is probative, and the person then says, well, I'm not going to answer that, then an adverse inference can be drawn. And that is consistent with the Supreme Court precedence as well. They've cited in our briefing. Only at trial it can take place. Is that right? I'm sorry, Your Honor? Only at trial? Well, essentially, yes, Your Honor. Of course, that would be the situation when someone would It doesn't count when it happens at the border. It has to happen in court. Is that your point? I don't think that has ever been decided by a court. It's never been suggested that I found in any of the cases that have been cited in these briefs. Well, thank you very much. Thank you very much, Your Honor. I appreciate it. May it please the Court, my name is Nicholas Harling, and I represent the respondent, Attorney General Lynch. Substantial evidence supports the agency's determination that the petitioner knowingly engaged in alien smuggling. Do you agree that the standard is clear, convincing, and unequivocal evidence? I do, Your Honor. And so we have to find not substantial evidence, if anything, but test it against that standard. You have to find that in order to reverse the agency's determination, you have to find that petitioner has submitted substantial evidence. He has submitted substantial evidence. That's just totally wrong. I'm sorry? He doesn't have to submit any evidence. Your Honor, I'm sorry. I didn't, you're right, the answer is clear, convincing. And your brief did this, too, and I really didn't understand what you were doing. Your brief began with some peculiar sentence about how he has to, a similar sentence, which is just totally wrong. I apologize for that, Your Honor, if that's the case. But at the core of this case, it's whether the burden met its full effect. The first sentence was, Manguia has not submitted of the assembly of argument compelling evidence that the government failed to meet its burden. What does that mean? It means nothing. It's a nonsensical sentence. Your Honor, that is a misstatement of the law. I just repeated it several times. You just did it again. Anyway, go ahead. Well, when we get to the core of the question of whether before the agency that the government presented clear and convincing evidence, this case, it did. And in addition to the adverse inference that is. But the one thing I want to clarify is that one has to adjust the substantial evidence standard for that. Yes, Your Honor. Because in this case, the government. Measured against that standard. Correct. Because the government has the burden because we are in the 237 proceeding. The burden, but a heightened, a severely heightened burden. You're right, Your Honor. And I apologize. I assume that that mistake came from the confusion in this case as to whether it was properly charged under 212 or 237. And I apologize for that. But in this case, for the clear and convincing evidence burden, in addition to the adverse inference that the agency drew from Petitioner's refusal to testify about his knowledge of the awning of the awnage of his backseat passengers, there was other evidence. And it was clear and convincing. There were at least three different reasons. One was during the primary inspection, the immigration inspector's suspicions were aroused that perhaps the backseat passengers were not who they said they were. Well, what is that? What's the evidence? We don't know why his suspicions were aroused. We don't know the evidence. So why is that evidence? Well, it's evidence in at least that we know there was something. Standing by itself, it wouldn't be much at all. But there are many other reasons for that. So that's the first one. The second, there was testimony that the alien did state that he knew these individuals. He knew them by their names. He knew them by the names that were on those cards. There was also the fact that- But how does that get you anywhere, unless you then say the names on their cards weren't their names, and you only know that because of what they said? And we don't really even have to debate whether you could rely on that or not, because the IJA and the BIA said they didn't. That's right, Your Honor. But that's why it goes back to why the adverse inference is so important. Any problem that the panel has with the remaining evidence that the agency relied upon, much of that could have been clarified had the alien simply, had Petitioner simply testified about, at his case, about his relationship with his passengers. I know, but you agree there has to be something else. So I'm trying to understand what the something else is, enough to add up to clear, convincing, and unequivocal. Unequivocal is a pretty high standard evidence. Well, Your Honor, I felt that too as I was reviewing and preparing for this case, because unequivocal stands out to me to be different than clear and convincing. But last month, this court in the en banc panel, in the Mondaca case, reiterated that there are just three standards of review, preponderance of the evidence, clear and convincing, and then beyond a reasonable doubt in the criminal context, and that the clear, unequivocal, and convincing evidence is nothing more than the clear and convincing evidence that is always used.  Well, whatever it is, it's still a pretty high standard. It is a high standard, Your Honor. But again, there was the suspicions that were raised during the primary inspections. That's nothing, because we don't know what did it. It's zero. Well, let's look at his own actions then. There's the fact that he waived his opportunity to go before an immigration judge. All right. Now, that, the I.J. was wrong when he said he admitted he waived it. That's true. And the On the admission that he waived it. He contested that he waived it. He contested it. That's right. All right. So there was never a finding as to whether he did in fact waive it, because it was of the erroneous view that he admitted he waived it, which he didn't. So therefore, you have two statements. We have the statement in the 213 that said he waived it. You have his statement that said he did waive it, and no resolution of that, because it was a mistake made. Right, Your Honor. But the immigration judge, it could have, the immigration judge also Could have made a decision but didn't. Well, the immigration judge did go on to say, to cite the fact that the alien made no meaningful attempt to recover his vehicle. Well, what does that mean? What he said was, I asked for an appointment and I didn't get an appointment. Somewhere earlier he said he didn't make an appointment, but he said he tried to make an appointment and he never got an appointment. Well, I'm not sure how the alien can really claim that he's waiting for an appointment 11 years after the fact.  that can be relied upon. He also said that he was told that he couldn't do that because he was, he had a very specific reason, because he was in immigration proceedings, meaning he had applied for adjustment, as I understand it. So he had an explanation for that. Well, Your Honor, I would also point out that But my point at this point, it really isn't that. It said it was never resolved because they made a mistake. Even if it was never resolved, Your Honor, I would argue that it was never challenged before the board or specifically challenged in his brief to the court. Therefore, he's waived it. What wasn't challenged? He's, his brief to the board and his opening brief to the court never challenged the agency's reliance on suspicions that were raised at the primary inspections. He's never challenged the fact that he did not waive, I'm sorry, that he didn't challenge the fact that the I-213 reflected that he didn't request a hearing before the immigration judge. And he's never challenged the agency's reliance on the fact that he did not make a meaningful attempt to recover his vehicle. He just doesn't address those. In his brief to the court, he focuses solely on the hearsay statements from the backseat passengers, which clearly, before the immigration judge and the board, were not considered in reaching its determination. And it is for those reasons, if the panel has no other questions, that the government did meet its burden by query commencing. So you say the evidence is the primary inspection, which, as I say, I think is zero. The fact that he was found to have waived the The primary inspection, the fact that the I-213 reflected that he waived his opportunity to go before an immigration judge, the fact that he never proactively made a But there was a mistake made about that, and then what? The fact that he never made a meaningful, proactive attempt to recover his vehicle, and most importantly, the adverse inference from his failure to evidence-query to this case, and that is significant. What, is, is there any one thing I was wondering is whether the Why, I guess it's, whether one could regard as evidence the fact that the people who talked to him at the time concluded that he had knowledge and acted on it by taking away his card and taking away his car, as at least, I mean, of course, that all traces back to the same statements of the people in the back of the car, presumably. Which I don't know whether that has any independent significance. But again, it goes back to the fact that clarity could have been added if he had chosen to testify. For example, in his brief to the board, he relies on a Sixth Circuit case that is factually similar, okay? In that case, the alien said, look, these are my friends. I knew they were living in the United States unlawfully, but I didn't think it was a problem for me to drive them back across the Canadian border because I've known that they've come back and forth many times before. The Sixth Circuit found that that explanation was enough to prevent the government from meeting its burden. However, because the alien didn't testify, didn't give us any understanding as to why he thought that if these people were who they were, he couldn't bring them across the border. All that could have been clarified had he just simply testified. This was not a criminal proceeding. So, to be honest about it, you're pretty much standing on that and everything else is kind of fluff. It doesn't really add up to much. No, I don't believe that it might not add up to much, but the question is, you know, there is other evidence. We know that it can't be the adverse inference standing on. There must be other evidence. Perhaps the case law is not clear as to whether other evidence is, but we know that there is other evidence and there's a real question of whether it's been significantly, that other evidence has been significantly challenged before the court, before the board. Okay, that's fine. Thank you very much. Thank you. Thank you, Your Honor. Just briefly, if I may. I think you mentioned you want to ask for additional time. I did say I would give him one minute. One minute. Thank you, Your Honor. Your Honor, the evidence in this case was circumstantial and was evidence of mere suspicion, but we do not deport people from the United States on mere suspicion. Have you contested the fact that he admitted that he waived? The statement was made that he admitted that he waived his appeal and that he admitted that he didn't make any serious attempt to recover the car. Have you conceded? Did you contest those factual errors in the IJ opinion? Your Honor, the Petitioner did not specifically contest those issues in his briefing. The Petitioner was represented by a different counsel both at trial and before the Board of Immigration Appeals. However, his claims were clear to the Board of Immigration Appeals that he was putting the Board of Immigration Appeals on notice. This Court has held that the exhaustion requirement only requires that the BIA be put on notice of the claim. He put the BIA on notice of these claims, so that was not waived. That was properly exhausted. But the important thing is that Congress has put the high burden on the government because we don't deport people on mere suspicion or circumstantial evidence. Your time is up.  Thank you, Your Honor. I'd like to ask counsel. Oh, I'm sorry. Go ahead. Counsel, I want to understand your argument that we can't draw an inference from his invocation of the privilege against self-incrimination. Are you arguing that there was something about the timing of that? What is your argument there? Thank you, Your Honor. We're not arguing so much of the timing, but we're arguing that before the adverse inference could be drawn by the immigration judge, something first had to happen. That first thing that had to happen was that the Petitioner had to be confronted with probative evidence and then said, well, I'm invoking my right. Well, why did he have to be confronted? I'm sorry, Your Honor? Why did he have to be confronted with the evidence? Because that's what the agency precedent has stated in matter of Guevara, that before the adverse inference is to be used against an individual, there must be some purposeful, if you will, evasion to answer the question in light of the evidence against them. Well, that could be an open question. Couldn't it have been? There's no precedent the other way. There's no precedent saying you have to have it in a given order. We would submit that the Board's decision in matter of Guevara holds that particular... Is there a precedent in our court to that effect? Not that I was able to find, Your Honor. Okay, thank you. Thank you very much. Judge, do you need anything else? Yes, thank you. Okay, thank you very much. Thank you, Your Honor. The case of Acosta-Munguia v. Lynch is submitted. We will go on to United States v. Harris.
judges: Wallace, Noonan, Berzon